Nestal *v.* Schmid.

---

MARTIN NESTAL and wife

*v.*

BARTHOLOMEW SCHMID.

Parol proof cannot be received to establish a resulting trust in lands purchased by an agent, and paid for entirely with his own money.

Nestal v. Schmid.

Bill for relief.   On final hearing on pleadings and proofs.

*Mr. A. Flanders* and *Mr. T. G. Lytle*, for complainants.

*Mr. C. E. Hendrickson*, for defendant.

THE CHANCELLOR.

The bill is filed for relief against a mortgage given by the complainants to the defendant on land conveyed by him to them, situated in Riverside, in the county of Burlington. The complainants allege that the defendant agreed to buy the mortgaged premises for the complainant Nestal, and as his agent; that he did so buy them for the price of $500 paid and secured to be paid by him; that he represented to Nestal that the owner would sell them for $1,000, but for no less; that Nestal then authorized him to buy them for him at that price, and that they were conveyed under the agreement by the defendant to Nestal for the price of $1,000, of which $400 were paid in cash, and the balance secured by a mortgage on the premises, made by the complainants in favor of the defendant, and that the complainants have discovered that the price paid by the defendant for the property was only $500.   The bill prays that the complainants may be permitted to redeem the mortgage by paying the amount which would be due to the defendant in an accounting on the basis of allowing him only what he paid for the property, and interest.   The proof of the alleged agency rests entirely on the testimony of the complainants.   It is denied by the answer, and by the defendant in his testimony.   Indeed, all the rest of the evidence in the cause bearing on the subject disproves it.   But, if it be admitted that the agency existed, that the defendant agreed with Nestal that he would buy the property for him, the suit cannot be maintained on the ground of agency, for it appears, and it is not disputed, that the money paid for the property was the money of the defendant, and he took the title in his own name.   A trust in the property in favor of

Nestal cannot, in view of the statute of frauds, be established by parol proof. *Story's Eq. Jur.*, § 1201 a.

Parol proof cannot be received to establish a resulting trust in lands purchased by an agent and paid for with his own funds, no money of the principal being used for the payments; for, the relation of principal and agent depends upon the agreement existing between them, and the trust, in such a case, must arise from the agreement, and not from the transaction, and where a trust arises from an agreement, it is within the statute of frauds, and must be in writing. This rule is so inflexible that, though the agent may be indicted and convicted of perjury in denying his character as agent in his answer under oath, the court cannot decree and establish the trust. *Perry on Trusts*, § 135.

The gist of the complaint is, that the defendant offered and promised to sell the property to Nestal for just the same price which he paid for it. It is alleged that he professed to have no pecuniary interest in the sale, and to be acting merely for the advantage of Nestal, and that the moving consideration was his desire to have a good neighbor and a good baker in the village. He had become acquainted with Nestal merely casually. The latter was a baker, pursuing his business in Philadelphia. Some of his customers lived in Riverside, and he thus had his attention called to that place as a good one in which to establish himself in his business. With that view he went to Riverside, and, while looking at the property occupied by the baker of the village, which property adjoined that of the defendant, he was informed by the defendant that he could not buy that property of the owner, because it was soon to be sold under foreclosure of mortgage. The defendant, as the complainants say, offered to buy it at the sheriff's sale for Nestal. He did not buy it at the sheriff's sale. It was purchased by the mortgagee, of whom the defendant bought it, subsequently, at the price of $500. He then sold it to Nestal for $1,000, of which $50 were to be paid on the signing of the agreement of sale, $400 were to be paid on the

delivery of the deed, and the payment of the balance was to be secured by mortgage on the property. The agreement for sale was entered into on the 12th of June, 1873. Subsequently it was agreed between Nestal and the defendant that the time for delivering the deed should be extended to the 1st of July, 1874. The consideration of this extension appears to have been the repairing of the house by Nestal, who entered into possession of it under the agreement. The deed was delivered to Nestal on the 1st of July, 1874, and the cash, $400, which, by the agreement of extension, was to be paid on the delivery of the deed, was paid, and a mortgage given to secure the balance of the purchase-money, $600. Nestal paid the interest on the mortgage up to January, 1877, which was after the beginning of this suit. The complainants, Nestal and his wife, both swear that the defendant repeatedly declared during the negotiation for the sale of the property that he did not want to make anything on the property; that they should have the property for just what it cost him; that he represented to them that the price which Nestal was to pay was that which was fixed by the owner of the property, the purchaser at the sheriff's sale, and was the lowest price at which she was willing to sell the property; that he first stated that she asked $800 for the property, and then that she declared she would not take less than $960, in view of the fact that she had been compelled to pay $160 costs of foreclosure, and, finally, that she asked $1,000 for the property, and would not sell it for less. The defendant, as appears by the testimony of Mr. Haines, the agent of Mrs. Scull, the owner, agreed to buy the property at the price of $500, "in the early part of June." The defendant made the agreement to sell to Nestal on the 12th of June. The defendant denies, both in his answer and in his testimony, the foregoing statements as to his representations in the negotiation, and alleges that he bought the property for himself; that Nestal and his wife came up to Riverside, to look at the property, after Nestal was first up there; that

Nestal told him if he (Schmid) bought the property, to let him know about it; that after that he saw Nestal in Philadelphia, at his house, and told him he had bought the property; that Nestal then asked him what he would take for the property, and that he told him he would take $1,000, and stated the conditions on which he would sell, which were those stated in the agreement of June; that Nestal said he would take the property; that he thought he could sell out so as to raise the money to meet the payments according to the conditions. He further says, that they then went to a conveyancer and made the agreement; that when the time for taking the deed arrived, Nestal said he was not able to pay the money, as he had not been able to sell out; that he (Schmid) then told him that he had an opportunity to sell the property to other parties, and that Nestal would lose the $50 which he had paid; that Nestal then said he wanted the property, and proposed that they make a new agreement, to which Schmid assented, and they went to Riverside and had one drawn there, by Mr. Garbe, a scrivener. He says that, in the course of the negotiation for the sale to Nestal, he told the latter that he (Nestal) could buy the property of the agent of the owner, and gave him the address of the agent, and that Nestal said it was of no use for him to go, for he had no money with which to buy the property. He says that he told Nestal to go himself and see about buying the property, and that Nestal replied that if he (Schmid) would buy it, he would buy it of Schmid, provided he could sell out. Both agreements were made by Nestal with Schmid as owner of the property, and the deed was made by Schmid as such owner.

The scrivener who was employed by Nestal and Schmid to draw the second agreement, testifies that Nestal bought the property of Schmid; that nothing was said about Schmid buying the property of a woman for Nestal, and that he heard nothing of any woman, or any other party. He says that Nestal gave as the reason for entering into the new agreement, that he was unable to raise the money to

Nestal *v.* Schmid.

carry out the existing one; that he had been unable to sell out without too much loss, and therefore they wanted a new agreement. This witness testifies that a year, and perhaps longer, after the second agreement was made, Nestal went to Mount Holly to endeavor to borrow money to pay off the mortgage which he had given to Schmid on account of the purchase-money of the property.

The scrivener who was employed by Nestal to draw the deed and bond and mortgage, testifies that Nestal gave him the same reason for making the second agreement: that he had been disappointed in selling his property, and was therefore unable to obtain the money required to carry out the first agreement. He says Nestal told him he had bought the property of Schmid, and said nothing of any woman in connection with the business, nor about Schmid having bought the property for him. He told Nestal that he (Nestal) had paid a great deal more for the property than Schmid paid, according to the consideration stated in the deed, and Nestal replied that he was aware of that, but was satisfied with his bargain.

The testimony of these witnesses, Messrs. Garbe and Walcott, in important respects contradicts that of Nestal. They have no interest in the suit, and appear to be entirely candid. Dr. Walcott, indeed, appears to have befriended Nestal by becoming his surety in a suit between him and Schmid in reference to the use and occupation of the property for the year previous to the delivery of the deed. . *Nestal* v. *Schmid*, 10 *Vr.* 686. It appears that Nestal, notwithstanding the statement in the bill that, immediately after discovering the fraud that had been practiced on him, he placed the matter in the hands of counsel, never did, in fact, make any complaint of the alleged fraud. He says in his testimony that the reason he did not complain was that he did not know what to do, that he did not know that he could obtain redress by means of legal proceedings.

Apart from the consideration that the matters which have just been passed upon are not within the frame of the bill

which, as has been said, is grounded on the allegation of agency, the proof is by no means sufficient to establish fraud in the conduct of Schmid. It is a noticeable fact and important circumstance that Nestal did not complain, seeing that he says that Dr. Walcott informed him, when the deed was drawn, that Schmid had sold the property to him for $700 more than he (Schmid) gave for it. In this respect his testimony does not comport with his bill, and his conduct was not in accordance with his claim. The bill will be dismissed, with costs.